**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRCIT OF ARKANSAS**

UNITED STATES OF AMERICA                              PLAINTIFF

VS.                              Case No. **4:17-cr-00321-DPM**

HERIBERTO FELIX RUIZ                              DEFENDANT

**MOTION TO SUPPRESS**

Comes now the defendant Heriberto Felix Ruiz, by and through his attorneys of record, respectfully requests that this Court suppress all property and contraband seized by the arresting officers, all observations made by the arresting officers, and all statements made by the Defendant.

1. On September 28, 2017, an Arkansas State Highway Patrol officer, without lawful authority stopped the Defendant's vehicle and detained the Defendant.

2. Any information from the stop of the Defendant's vehicle, and any contraband found after the stop, were unlawfully obtained because:

    a. At the time the police officer stopped the Defendant's vehicle, the police officer lacked reasonable suspicion that the Defendant was committing a crime or traffic violation. Thus, the stop and any continued detention violated the Fourth Amendment to the United States Constitution.

    b. The police officer exceeded the scope of the stop by detaining the Defendant for an unnecessary length of time, thus, violating the Fourth Amendment to the United States Constitution.

    c. Considering the totality of the circumstances, the police officer's warrantless search of the Defendant's vehicle was unreasonable.

1

d.  Considering the totality of the circumstances, the length of the police officer's detention of the Defendant was unreasonable.

e.  The police officer's seizure of evidence and observations of the Defendant were a direct result of the unlawful stop and detention, and thus, must be suppressed from evidence.

WHEREFORE, the Defendant prays the Court:

1.  Suppress and bar from use as evidence in the trial of this cause any seized items and observations, including contraband found after the search of the vehicle, which resulted from the illegal stop, detention and search.

2.  Suppress and bar from use in the trial of this cause all testimony relating to any seized items and observations, including the Defendant's statements and the contraband found, which resulted from the illegal stop, detention and search.

Date:

_/s/ Jose C. Rojo_____
Jose C. Rojo
3745 Fourth Ave.
San Diego, CA 92103.
Work Phone:  (619) 298-6522.
Fax: (619)615-2254
Email:josecrojo@aol.com


__/s/ Gregory E. Bryant
Gregory E. Bryant
Ark. Bar No. 82024
300 Spring Building, Ste. 310
Little Rock, AR 72201
Tel: (501)375-3344
Fax: (501)376-0770
Email: geb@gregbryantlaw.com

## MEMORANDUM IN SUPPORT

### I.        STATEMENT OF FACTS

Mr. Felix Ruiz was traveling in the front passenger seat inconspicuously on Interstate I-40 in route to New York. It was an easy morning drive with regular traffic conditions. Around 9:17 in the morning, Trooper Goodman spotted Mr. Felix Ruiz's Hyundai, Santa Fe rental vehicle while the trooper was in his car parked along the interstate. Trooper Goodman claims he saw the vehicle drive past him going eastbound, swerving on and across the centerline. (ROI) Report of Incident.

The trooper pulled out of the side of the freeway, he then continued for several hundred yards until he reached the vehicle near the 73 mile marker. The trooper claimed Mr. Felix Ruiz's rental vehicle appeared to be swerving on and across the centerline. The video of the patrol car produced through discovery, however, depicts the vehicle to be driving within its lane. (See Dashcam Video) The fact is that there was no reasonable suspicion and no probable cause to stop the vehicle.

After making the stop, the trooper asked Juan Avila, the driver, for his driver's license and Mr. Avila could not produce one and asked to retrieve his identification from his bag in the back.   The trooper then asked Mr. Felix Ruiz to produce his driver's license.   Mr. Felix Ruiz does not speak English with ease and the trooper understood that. Mr. Felix Ruiz gave the trooper his driver's license and produced the vehicle rental agreement. The trooper then asked Mr. Felix Ruiz to exit the vehicle, frisked him, and ordered him to stand along the side of the freeway with Deputy Saffold.

About 7 minutes after the stop, Trooper Goodman began conducting a search of the luggage located in the trunk of the vehicle. He then proceeded to remove the trunk door trim, trunk side panel, and trunk cover. After 5 minutes of searching the trunk of the vehicle he found nothing. Trooper Goodman then searched the spare tire located under the vehicle. Trooper proceeded to cut a small hole in the spare tire; he stated he observed

fingerprints all over the tire. No consent to search and no warrant was sought.  Trooper Goodman found contraband concealed in the spare tire.

Trooper Goodman continued searching the backseat and the front passenger side of the vehicle. Trooper placed handcuffs on Mr. Felix Ruiz and sat him in the back of his patrol car after frisking him a second time.

About 24 minutes after the initial stop, the trooper requested Corporal Syfert and Trooper Race for backup. While waiting for their arrival, the trooper attempted to persuade the driver of the vehicle to blame Mr. Felix Ruiz of the contraband found in the spare tire.  After about 46 minutes, Mr. Felix Ruiz was transported to the Drug Task Force in Russellville, Arkansas.

## II. LAW AND ARGUMENT

The Fourth Amendment imposes limits on search-and-seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals. *See United States v. Brignoni-Ponce,*422 U. S. 873, 878 (1975).  Also, it has long been held that The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.  *Davis v. Mississippi,*394 U. S. 721 (1969); *Terry v. Ohio*, 392 U. S. 1, 16-19 (1968).  "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person," *id*., at 16, and the Fourth Amendment requires that the seizure be "reasonable." As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. *Id*., at 20-21; *Camara v. Municipal Court*, 387 U. S. 523, 536-537 (1967).

A vehicle or a person, therefore, must not be "seized" without reasonable justification.  A driver's ancestry should not be a justification for a seizure however brief

that is. "The stopping of respondent's automobile solely because its occupants appeared to be of Mexican ancestry was a patent violation of the Fourth Amendment." *United States v. Brignoni-Ponce*, 422 US 873, 888  (1975) (Justice Douglass Concurring). Given the purported reason for the stop here, it is evident the ancestry of the occupants of the car is what drove the Trooper to initiate the stop in this case.

A traffic stop is a "seizure" within the meaning of the Fourth Amendment and must be reasonable under the circumstances.  See *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979). A warrantless search is "per se unreasonable" unless one of the specifically established exceptions is present. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, (1973).

Police officers can lawfully stop a vehicle if there is probable cause to believe that the driver committed a traffic violation.  However, because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason. Rather, they must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place. *Gaddis ex rel. Gaddis v. Redford Twp.,* 364 F.3d 763, 771 n.6 (6th Cir.  2004).   The constitutionality of a traffic stop is assessed under the two-prong standard in *Terry v. Ohio*, 392 U.S. 1 (1968). First, the articulated basis for the traffic stop must be legitimate.  See *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992).  Second, the officers' actions during the traffic stop must be "reasonably related in scope" to the basis for the seizure.

Therefore, even when the vehicle is legally stopped, the detention cannot be prolonged beyond the time necessary to handle the reason for the stop.

> We hold that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.  A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). *Rodriguez v. US*, 135 S. Ct. 1609, 1612 (2015)

The investigation for the traffic stop must be diligently pursued and completed

expeditiously.   *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion) ("The

scope of the detention must be carefully tailored to its underlying justification.").

> Because addressing the infraction is the purpose of the stop, it may 'last
> no longer than is necessary to effectuate th[at] purpose.' (Citations
> omitted).  Authority for the seizure thus ends when tasks tied to the traffic
> infraction are—or reasonably should have been—completed. See *Sharpe*,
> 470 U.S., at 686, (in determining the reasonable duration of a stop, "it [is]
> appropriate to examine whether the police diligently pursued [the]
> investigation").
> *Rodriguez*, 135 S. Ct. at 1614 (2015)

The search subsequent to the traffic stop was unlawful.  The automobile can only

be searched when there is probable cause.  As best illustrated by a quote from the

Supreme Court from the prohibition days:

> 'It would be intolerable and unreasonable if a prohibition agent were
> authorized to stop every automobile on the chance of finding liquor and
> thus subject all persons lawfully using the highways to the inconvenience
> and indignity of such a search. Travellers may be so stopped in crossing an
> international boundary because of national self protection reasonably
> requiring one entering the country to identify himself as entitled to come
> in, and his belongings as effects which may be lawfully brought in. But
> those lawfully within the country, entitled to use the public highways,
> have a right to free passage without interruption or search unless there
> is known to a competent official authorized to search, probable cause for
> believing that their vehicles are carrying contraband or illegal
> merchandise.'   267 U. S., at 153-154.

*Almeida-Sanchez v. United States*, 413 US 266, 275 (1973) citing *Carroll v. United

States,* 267 US 132 (1925)

Here, the trooper did not have reasonable suspicion to stop Mr. Felix Ruiz' rental

vehicle and did not have consent or probable cause to search the vehicle. The alleged

justification for the stop of the car rests almost entirely on observations such as the

trooper claimed the vehicle was swerving on and across the centerline for several

hundred feet.  However, the dashcam footage provided through discovery shows the

trooper followed the vehicle that Mr. Felix Ruiz was traveling in for about one minute and no swerving.  The footage does not support the trooper's claims of the vehicle swerving on and across the centerline. Therefore, this does not support a stop of the vehicle, as it does not amount to suspicion that any occupant of the vehicle was involved in any criminal activity.

Under the Fourth Amendment, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly[30] in order to "investigate the circumstances that provoke suspicion." *United States* v. *Brignoni-Ponce,* 422 U. S. 873, 881 (1975). "[T]he stop and inquiry must be `reasonably related in scope to the justification for their initiation.' " *Ibid.* (quoting *Terry* v. *Ohio, supra,* at 29.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.  But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion that *Terry* stops are subject to the dictates of *Miranda.*

The trooper asked the driver, Mr. Juan Avila, for his driver's license; Mr. Avila produced an identification card and said he would double check on that when asked about his driving record; he told the trooper he just switched to the driver's seat at he gas station because Mr. Felix was tired and that Mr. Felix-Ruiz is whose rental car he was driving.  The trooper then inquired from Mr. Felix-Ruiz, the passenger, at that point.

The trooper obtained Mr. Felix Ruiz driver's license and the rental contract for the vehicle, he asked Mr. Felix Ruiz about his trip in Spanish because he does not speak English. Trooper also questioned Mr. Felix Ruiz about the rental vehicle obtained in California.  Mr. Ruiz answered the Trooper questions consistent with what Mr. Avila had

said.  At that point, the detention should have ceased because the purpose of the stop had been fulfilled.  The Trooper claimed Mr. Felix Ruiz appeared uncomfortable speaking about his trip and was extremely nervous. This claim is hollow and subjective,  is not supported by the facts, and was made despite the fact that both Mr. Felix and Mr. Avila's answers were consistent regarding their trip to New York to visit Mr. Felix' son for a few days.  In the video, Mr. Felix' demeanor is inconspicuous.  Mr. Felix Ruiz demeanor does not rise to the level of suspicion that a crime is being committed or has committed. Additionally, nervousness alone, even extreme nervousness involving trembling hands and avoiding eye contact, does not amount to such suspicion.  *Chavez-Valenzuela*, 268 F.3d 719, 725 (9th Cir. 2001); *United States v. Fuentes-Cariaga*, 209 F.3d 1140, 1144 (9th Cir. 2000).

The trooper summarily and vaguely asked for consent to search the vehicle; the trooper never got an answer.  The trooper claims Mr. Felix gave consent to search the vehicle; however, the required knowing, voluntary, affirmative consent is not evidenced in the video of the encounter.  Moreover, in any consensual search, the scope of the consent is exceeded when the officers are intruding and destroying the property searched without any further consent.  Here, the trooper said he noticed something suspicious in the spare tire because it was deflated and had fingerprints around the rim.  He then punctured the tire to make a hole on the side to check the inside of the tire rendering the tire unusable.  It is doubtful any motorist would include the destruction of his/her spare tire in the initial consenting to a cursory search of their vehicle by law enforcement.  If the trooper in fact believed he had to make a hole on the side of the tire to check the inside, he should have asked Mr. Felix-Ruiz for further consent or should have requested a warrant at that point.

The search of the automobile was not justified by a warrant or any exception to the Fourth Amendment's warrant requirement, which may allow police to "conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband. *Chambers v. Maroney,* 399 U.S. 42, 48 (1970).  The law is clear, as stated in *United States v. Ross*, 456 U. S. 798, 809 (1982), when the Court said that in cases where there is probable cause to search a vehicle "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained. "  *Id*. At 809  Those facts that would justify the issuance of a warrant to search are noticeably lacking in the present case.

Here, the trooper had no basis for any probable cause for the warrantless search of the vehicle and the spare tire.  Mr. Juan Avila was otherwise driving innocuously.  Mr. Felix-Ruiz presented his driver's license and the rental agreement for the vehicle. This should have been the end of the inquiry and the trooper was to issue a ticket, end the detention/seizure, and let Mr. Felix Ruiz proceed. After the trooper ordered Mr. Felix Ruiz and other occupants out of the vehicle, he conducted a search of the trunk including the trunk door trim, trunk side panel, and trunk cover. The initial search produced no contraband.   The cursory search should have ended here.  Only after looking under the vehicle and puncturing a gapping hole in the spare tire, did the trooper find potential contraband.

> Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office.  *Brinegar* v. *United States,* 338 U. S. 160 (1949); *Carroll* v. *United States,* 267 U. S. 132 (1925). The cases so holding have, however, always insisted that **the officers conducting the search have "reasonable or probable cause" to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search.** The record before us does not contain evidence that Sheriff Kirkpatrick, Deputy Sheriff Powers, or the officers who assisted in the search had reasonable or probable cause to believe that evidence would be found in petitioners' car.

*Dyke v. Taylor Implement Mfg. Co.,* 391 US 216, 222 (1968) **(**Emphasis Added)

The plain view doctrine does not apply here because the contraband was not in plain view.  The Court in *Long* explained the "plain-view" doctrine. See *Long, supra,* at 1050; see also *United States* v. *Hensley,* 469 U. S. 221, 235 (1985) (upholding plain-view seizure in context  of *Terry* stop). Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See *Horton* v. *California,* 496 U. S. 128, 136-137 (1990); *Texas* v. *Brown,* 460 U. S. 730, 739 (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object — *i. e.,* if "its incriminating character [is not] `immediately apparent,' " *Horton, supra,* at 136 — the plain-view doctrine cannot justify its seizure. *Arizona* v. *Hicks,* 480 U. S. 321 (1987).

After the initial search produced no contraband, the trooper then proceeded to check the spare tire located under the vehicle. He claims he observed fingerprints –which is not in and of itself unusual-- and it appeared flat.  Based on his observations of the spare tire, he continued to make an unreasonable search of the tire by cutting open a hole and checking the contents within where contraband was found. However, the spare tire's incriminating character was not immediately apparent and therefore the seizure of the contraband was unjustifiable.

Under the exclusionary rule, suppression of evidence is the proper remedy for violations of the Fourth Amendment. *United States v. Leon*, 486 U.S. 897 (1984). The "fruit of the poisonous tree" doctrine precludes not only the admissibility of evidence which is the direct result of Fourth Amendment violations, but also any evidence obtained by an exploitation of that violation. *Wong Sun v. United States*, 371 U.S. 471 (1963). Therefore, any evidence obtained as a result of the officers' unconstitutional actions, and its fruits, including all  of the defendants' statements, must be suppressed.

10

### III.    CONCLUSION

For the foregoing reasons, all the evidence seized pursuant to the illegal search of Mr. Felix Ruiz's vehicle, including subsequent statements and observations, should be suppressed.

Respectfully submitted,


 /s/ Jose C. Rojo
Jose C. Rojo
3745 Fourth Ave.
San Diego, CA 92103.
Work Phone:  (619) 298-6522.
Fax: (619)615-2254
Email:josecrojo@aol.com


  /s/ Gregory E. Bryant
Gregory E. Bryant
Ark. Bar No. 82024
300 Spring Building, Ste. 310
Little Rock, AR 72201
Tel: (501)375-3344
Fax: (501)376-0770
Email: geb@gregbryantlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via this Court's electronic filing system on all counsel of record on this  12th day of August, 2019.


/s/ Jose C. Rojo
JOSE C. ROJO

11